# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

QFS TRANSPORTATION, LLC,
     Plaintiff,

Case No. 1:18-cv-630
Barrett, J.
Litkovitz, M.J.

vs.

INFINITY TRANSPORT SERVICES,
INC., et al.,
     Defendants.

**REPORT AND
RECOMMENDATION**

Plaintiff QFS Transportation, LLC ("QFS") initiated this breach of contract action in

September 2018 against its former intermodal shipping agent,[1] defendant Infinity Transport

Services, Inc. ("Infinity"), and Infinity's owner and primary principal, defendant Joseph

Dimperio ("Dimperio"). (Doc. 1). Defendants filed an answer and counterclaim against

plaintiff. (Doc. 7). This matter is before the Court on plaintiff's motion to dismiss Counts 3 and

4 of defendants' counterclaim (Doc. 14), defendants' response in opposition (Doc. 21), and

plaintiff's reply memorandum (Doc. 23). Pursuant to the undersigned's standing order to foster

increased oral advocacy opportunities for newer lawyers, the Court heard oral arguments on the

motion to dismiss on February 20, 2019.

## I. Counterclaim Allegations

On November 6, 2018, defendants filed their answer and counterclaims for breach of

contract (Count 1), unjust enrichment (Count 2), defamation (Count 3), and tortious interference

with business relationships (Count 4). (Doc. 7).[2] In their Count 3 defamation counterclaim,

---

[1] At the hearing, plaintiff's counsel explained that QFS is a carrier that coordinates transportation logistics and intermodal transportation services. QFS has a network of agents that allows it to provide coverage around the country.

[2] Plaintiff only moves to dismiss Counts 3 and 4 of defendants' counterclaim. Therefore, the Court will only summarize the allegations in Counts 3 and 4.

defendants allege that they maintain contractual and business relationships with owner-operators and drivers who transport freight for their customers. (*Id.* at ¶ 18). Defendants allege that QFS "failed to properly pay or compensate those owner-operators and drivers and improperly mishandled, depleted, or failed to return compensation, escrow funds, and deposits to those owner-operators and drivers." (*Id.* at ¶ 19). Defendants allege that QFS and its authorized agents, however, "have made false statements of material fact to Defendants' owner-operators and drivers" suggesting that defendants, rather than QFS, are improperly holding or refusing to return escrow funds. (*Id.* at ¶ 20). Defendants allege that "[t]hese false statements by QFS and/or its authorized agents are defamatory, reflect unfavorably on Defendants' character, and have injured Defendants' trade and business." (*Id.* at ¶ 21). Defendants allege that QFS "made such false and defamatory statements unreasonably, negligently, with knowledge of their falsity, and/or with reckless disregard for the truth or falsity of such statements." (*Id.* at ¶ 22). Defendants allege that they suffered damages as a result of the false and defamatory statements. (*Id.* at ¶ 23).

In their Count 4 tortious interference with business relationships counterclaim, defendants allege that their owner-operators and drivers signed lease agreements with QFS, and QFS collected funds from the owner-operators and drivers to be held in escrow for the stated purpose of reimbursing QFS for certain advanced expenses, including charge-backs, damaged shipments, per diem charges, toll violations, fuel taxes, fuel surcharges, and detention fees. (*Id.* at ¶¶ 25-26). However, QFS failed to return the escrow funds under certain agreed-upon conditions, stating that QFS is withholding the funds due to "active litigation." (*Id.* at ¶¶ 27-28). Defendants' contractual and economic relations with the owner-operators and drivers suffered as a result. (*Id.* at ¶ 29).

## II. Plaintiff's Motion to Dismiss Counts 3 and 4 of Defendants' Counterclaim (Doc. 14)

### A. Rule 12(b)(6) Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### B. Count 3 (Defamation)

Plaintiff moves to dismiss defendants' Count 3 counterclaim for defamation on the basis that it fails to state the necessary elements for defamation under Ohio law. (Doc. 14). Plaintiff argues that defendants have not (1) identified any actual statements or specific third-party recipients, (2) alleged that QFS's statements, if any, were defamatory, (3) shown that QFS's statements were not privileged, or (4) pled that the alleged defamatory statements were defamatory per se, or that there were any special damages. (*Id.* at 2).

Defendants argue that they have pled sufficient facts to support each element of their

defamation claim. Defendants contend that "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." (Doc. 21 at 4-5) (quoting *MedChoice Fin., LLC v. ADS Alliance Data Sys.*, 857 F. Supp. 2d 665, 673 (S.D. Ohio 2012)). Defendants argue that their counterclaim specifically alleges that plaintiff or its agents made statements falsely suggesting defendants were withholding escrow funds. (*Id.* at 5). Defendants argue that they have sufficiently alleged that plaintiff's statements were defamatory by expressly alleging that these statements "reflect[ed] unfavorably on [Defendants'] character, and have injured Defendants' trade and business." (*Id.* at 6) (citing Doc. 7 at ¶ 21).

Under Ohio law, "defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Jackson v. Columbus*, 883 N.E.2d 1060, 1064 (Ohio 2008) (quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 651 N.E.2d 1283, 1298 (Ohio 1995)). To state a claim for relief for defamation, plaintiff must allege facts showing: "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Boulger v. Woods*, No. 2:17-cv-186, 2018 WL 527009, at *8 (S.D. Ohio Jan. 24, 2018) (citing *Susan B. Anthony List v. Driehaus*, 779 F.3d 628, 632-33 (6th Cir. 2015) (in turn quoting *Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d 832, 852, ¶ 77 (Ohio 2012)). Failure to establish any one of these elements is fatal to the claim. *Id.* Courts have held that the general pleading standards of Rule 8(a)(2) apply to defamation claims. *Universal Health*

*Grp. v. Allstate Ins. Co.*, No. 09-12524, 2010 WL 2278618, at *4 (E.D. Mich. May 12, 2010)

(Report and Recommendation) ("[N]othing in the Federal Rules suggests that pleading a

defamation claim is subject to higher pleading standard than any other claim."), *adopted*, 2010

WL 2287151 (E.D. Mich. June 4, 2010); *Scheser v. Island Hospitality Mgmt.*, No. 09-cv-961,

2010 WL 1742532, at *1 (W.D. Ky. Apr. 28, 2010) (there is "no reason to impose a heightened

pleading standard" in a defamation case).

Plaintiff first argues that defendants have failed to identify false and defamatory

statements or third-party recipients. (Doc. 14 at 6). Plaintiff argues that defendants' defamation

claim is a "bare allegation" and fails to "plead or identify what was specifically communicated,

to which owner-operators and drivers the 'suggestions' [about the withholding of escrow funds]

were made, how the 'suggestions' were made (orally or in writing), and where and when they

were made." (*Id.*). Plaintiff also argues that defendants have not alleged that any statements

were defamatory and only make a conclusory statement that they have been injured in their trade

and business, without explaining how. (*Id.* at 8).

"A defamation [counterclaim] must allege the substance of the alleged defamatory

statements although they need not be set out verbatim." *Doe v. Univ. of Dayton*, No. 3:17-cv-

134, 2018 WL 1393894, at *5 (S.D. Ohio Mar. 20, 2018), *aff'd*, No. 18-3339, 2019 WL 1224606

(6th Cir. Mar. 15, 2019). Under Ohio law, a statement is defamatory if it, inter alia, "affect[s] a

person adversely in his or her trade, business or profession." *Croce v. N.Y. Times Co.*, 345 F.

Supp. 3d 961, 974 (S.D. Ohio 2018) (internal citations omitted). Defendants' counterclaim

sufficiently identifies the substance of the alleged defamatory statement—that QFS and/or its

agents made false statements of fact suggesting that defendants were "improperly holding or

refusing to return" escrow funds—and the third parties to whom QFS made the alleged

statements—to defendants' owner-operators and drivers. (Doc. 7 at ¶ 20). Defendants also allege that these statements made by QFS to defendants' owner-operators and drivers were false and defamatory and injured defendants' trade and business. (*Id.* at ¶ 21). Based on these allegations, the Court concludes that defendants have properly pled the first two elements of a defamation claim such that plaintiff has been given fair notice of the grounds of defendants' defamation counterclaim.

Next, plaintiff argues that defendants have failed to plead that QFS's alleged statements were made without privilege. (Doc. 14 at 9). However, "privilege is an affirmative defense to a defamation claim and [d]efendants need not plead facts to defeat an affirmative defense." *MedChoice Fin., LLC*, 857 F. Supp. 2d at 674 (and cases cited therein). *See also Gallagher v. Stonegate Mortg. Corp.*, No. 99684, 2013 WL 6858040, at *5 (Ohio Ct. App. Dec. 26, 2013) ("Because 'qualified privilege' only affects the burden of proof related to establishing malice and does not change the actionable quality of the defamation claim, it cannot be used in the instant case as a basis to dismiss the complaint."). Therefore, dismissal of defendants' defamation claim is not appropriate on this basis.

Finally, plaintiff argues that defendants have failed to identify any special harm that QFS's alleged statements caused them or that the statements were defamatory per se. (Doc. 14 at 11). "A defamatory statement that is injurious to a plaintiff's trade or business is defamatory per se and, in such a case, damages will be presumed and need not be pled or proven." *MedChoice Fin., LLC,* 857 F. Supp. 2d at 674 (citing *Murray v. Knight-Ridder, Inc.*, No. 02 BE 45, 2004 WL 333250, at *3 (Ohio Ct. App. Feb. 18, 2004)). Here, defendants allege that the statements made by QFS are "defamatory, reflect unfavorably on Defendants' character, and have injured Defendants' trade and business." (Doc. 7 at ¶ 21). Plaintiff argues that this is a "blanket

assertion" and defendants have not provided support for their allegations of trade and business injury. (Doc. 14 at 11). However, construing defendants' allegation in the context of its entire counterclaim and in the light most favorable to defendants, as the Court must do on a motion to dismiss, it is plausible to infer that falsely misrepresenting that defendants, and not QFS, are improperly withholding or refusing to release escrow funds due to those with whom they are in business would be harmful to defendants' continuing business relationships with the owner-operators or drivers. The Court concludes that defendants' allegations are sufficient to meet the notice requirements of Rule 8(a).

Accordingly, plaintiff's motion to dismiss defendants' Count 3 counterclaim for defamation should be denied.

### C. Count 4 (Tortious Interference of Business Relationship)

Plaintiff also moves to dismiss defendants' Count 4 counterclaim on the basis that defendants have failed to plead the requisite elements under Ohio law to state a claim for tortious interference with business relationships. (Doc. 14 at 12-14).

Defendants argue that they have sufficiently pled the first element of tortious interference—a business relationship—by alleging that owner-operators and drivers affiliated with defendants signed owner-operator lease agreements with plaintiff to transport freight for defendants' customers. (Doc. 21 at 9) (citing Doc. 7 at ¶¶ 25-26). Defendants argue that they have sufficiently pled intentional interference in Paragraph 28 of their counterclaim by alleging that "owner-operators and drivers fully and faithfully satisfied all conditions necessary for the return of their respective escrow funds, but [Plaintiff] has failed to return the same without just cause of valid basis, stating instead that [Plaintiff] is withholding such escrow funds due to 'active litigation' with defendants." (*Id.* at 9-10) (citing Doc. 7 at ¶ 28). Defendants also argue

that they satisfy the final element by making clear that they have suffered pecuniary damages. (*Id.* at 10) (citing Doc. 7 at ¶ 31).

"Tortious interference with a business relationship requires that a [counter] defendant interfere with the relationship of the [counter-claimant] and a third party." *Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 757 (S.D. Ohio 2013). To state a counterclaim for tortious interference with a business relationship under Ohio law, defendants must allege: "(1) the existence of a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Id.* at 756.

Plaintiff first argues that defendants have failed to allege the specific business relationships they had with owner-operators and drivers. (Doc. 14 at 13). However, defendants specifically state in their counterclaim that QFS interfered with defendants' contractual and economic relations with their owner-operators and drivers, who affiliated with defendants and signed agreements with QFS in order to transport freight for defendants' customers. (Doc. 7 at ¶¶ 25, 29). Defendants also allege that they "maintain contractual and business relationships with a number of owner-operators and drivers who transport freight for Defendants' customers." (*Id.* at ¶ 18, incorporated by reference in ¶ 24). Defendants thus allege that they had a business relationship with owner-operators and drivers who transported freight for defendants' customers and signed agreements with QFS in order to carry out these operations. The Court is unpersuaded by plaintiff's argument that defendants' allegations of a business relationship are not specific enough at this stage in the proceedings, especially when all of the cases cited by plaintiff were decided at the summary judgment and directed verdict stages.

Plaintiff next argues that defendants have failed to allege that QFS knew about the business relationship, that QFS intentionally interfered with the business relationship, and that defendants suffered damages resulting therefrom. (Doc. 14 at 13-14). However, the Court concludes that defendants have sufficiently alleged all three of these elements in their Count 4 counterclaim for tortious interference with business relationships. Defendants allege in their counterclaim that QFS knew of this business relationship because the owner-operators and drivers signed Owner-Operator Lease Agreements directly with QFS to transport freight for defendants' customers ("knowledge"). (Doc. 7 at ¶ 25). In addition, defendants sufficiently plead that QFS intentionally interfered with defendants' contractual relationship with the owner-operators and drivers by failing to return their respective escrow funds that were collected in accordance with the Owner-Operator Lease Agreements with QFS ("intentional interference"). (*Id.* at ¶¶ 28-29). Defendants also plead that they suffered "pecuniary damages" as a result of QFS's conduct ("damages resulting therefrom"). (*Id.* at ¶ 31).

Finally, plaintiff argues that defendants' counterclaim attempts to "convert an alleged breach of contact into a tort claim." (Doc. 14 at 14-16). Plaintiff argues the "interference" that defendants allege stems from QFS allegedly breaching its contracts with owner-operators and drivers. (*Id.* at 14). Plaintiff maintains that while Ohio does recognize a separate cause of action for tortious interference with business relationships, defendants here attempt to add a tort claim that can only be proven on the same set of facts as their breach of contract claim. (*Id.* at 14-15).

"A claim for tortious interference with a business relationship is not cognizable where the interference results as a mere consequence of a breach of contract." *Lambert v. Kazinetz*, 250 F. Supp. 2d 908, 917 (S.D. Ohio 2003) (citing *Digital & Analog Design Corp. v. N. Supply Co.*, 540 N.E.2d 1358, 1368 (Ohio 1989)). An exception exists where the breaching party holds "a

motive to interfere with the adverse party's business relations rather than by an interference with business resulting as a mere consequence of such breach." *Digital & Analog Design Corp.*, 540 N.E.2d at 1368. Ohio courts have consistently stated that "it is no tort to breach a contract, regardless of motive." *Canderm Pharmacal, Ltd. v. Elder Pharm., Inc.*, 862 F.2d 597, 602 (6th Cir. 1988) (citing cases from the Supreme Court of Ohio).

At this stage in the proceedings, the Court agrees that defendants have stated a separate, independent counterclaim for tortious interference with business relationships apart from any claim arising from the breach of contract with the owner-operators and drivers. As defendants argue, their tortious interference claim does not solely arise from the breach of plaintiff's contracts with owner-operators and drivers. (Doc. 21 at 11). Defendants maintain that the claim "is based upon Plaintiff's independent extra-contractual conduct after the Agreement was formally terminated," including plaintiff's efforts to undermine defendants' continued working relationships with the owner-operators and drivers by withholding escrow funds allegedly because of "active litigation" with defendants (Doc. 7 at ¶ 28) and by making false statements that defendants, and not QFS, are withholding such funds (Doc. 7 at ¶¶ 24, 20). (*Id.*). The Count 4 counterclaim alleges that by virtue of QFS's alleged failure to return escrow funds to the owner-operators and drivers (who transport freight for defendants), QFS has deprived defendants of the benefit of continuing relationships with the owner-operators and drivers. QFS alleges that it owed contractual duties to the owner-operators and drivers, if anyone, and not to defendants. (Doc. 14 at 15). However, the allegations contained in defendants' Count 4 counterclaim are not a direct result of QFS's alleged breach. Rather, as a result of this alleged breach between QFS and the owner-operators and drivers, defendants' relationship with the owner-operators and

drivers in transporting freight suffered. Accordingly, plaintiff's motion to dismiss defendants' Count 4 counterclaim for tortious interference with business relationships should be denied.

## V. Conclusion

Based on the foregoing, it is **RECOMMENDED** that plaintiff's motions to dismiss Counts 3 and 4 of defendants' counterclaim (Doc. 14) be **DENIED**.

Date: 6/6/19

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

QFS TRANSPORTATION, LLC  
    Plaintiff,

Case No. 1:18-cv-630  
Barrett, J.  
Litkovitz, M.J.

vs.

INFINITY TRANSPORT SERVICES,  
INC., et al.,  
    Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).